# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

KATHLENE KAITSCHUCK,         )
                                     )
       Plaintiff,          )
                                     )
       v.               )     No. 13 C 1985
                                     )
DOC'S DRUGS, LTD., et al.,     )
                                     )
       Defendants.      )

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Plaintiff Kathlene Kaitschuck's (Kaitschuck) motion for summary judgment, and on Defendants' motion for summary judgment. For the reasons stated below, Kaitschuck's motion for summary judgment is denied, Defendants' motion for summary judgment is granted in part, and denied in part, and the remaining state law claims are dismissed without prejudice.

## BACKGROUND

Kaitschuck allegedly was working for Defendant Doc's Drugs, LTD, (DDL) as a Pharmacy Technician for many years and continued to work at DDL until the termination of her employment in 2012. In 2010, DDL implemented a Pharmacy Technician Program (Program) under which a Pharmacy Technician was required to obtain certification by the Pharmacy Technician Certification Board (Certification)

1

as a condition of employment for DDL.  Under the Program, any Pharmacy Technician licensed before January 1, 2008 had to obtain the Certification before January 1, 2012.   Kaitschuck claims that in the summer of 2011, she requested medical leave for foot surgery from her supervisor Defendant Jeff Haran (Haran) and the request was approved from May 17, 2011 to September 26, 2011.  Kaitschuck allegedly returned to work and on November 30, 2011, she requested medical leave from Haran for neck surgery.   Haran allegedly approved the leave starting on December 12, 2011.  At the end of 2011, Kaitschuck had failed to obtain the Certification and had failed to even attempt to take the exam for the Certification (Exam).  On January 10, 2012, Kaitschuck's husband allegedly went to DDL corporate office to submit Kaitschuck's disability insurance program and was asked whether Kaitschuck had obtained the Certification.  Kaitschuck's husband allegedly indicated that Kaitschuck had not obtained the Certification and that same day Haran allegedly sent a letter to Kaitschuck informing her that her employment had been terminated.  Kaitschuck includes in her amended complaint intentional infliction of emotional distress (IIED) claims (Count I), a claim alleging discrimination based on Kaitschuck's perceived and actual disability in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.* (Count II), an ADA retaliation claim (Compl. Par. 113), (Count II), an ADA failure to accommodate claim (Count III), and a claim alleging retaliation in violation of the Family Medical Leave Act (FMLA), 29 U.S.C. § 2601 *et seq.* (Count IV).  Kaitschuck now moves for summary judgment and Defendants have filed a cross-motion for summary judgment.

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Smith v. Hope School*, 560 F.3d 694, 699 (7th Cir. 2009). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Phillip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). In ruling on a motion for summary judgment, the court must consider the record as a whole, in a light most favorable to the non-moving party, and draw all reasonable inferences in favor of the non-moving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000). When there are cross motions for summary judgment, the court should "construe the evidence and all reasonable inferences in favor of the party against whom the motion under consideration is made." *Premcor USA, Inc. v. American Home Assurance Co.*, 400 F.3d 523, 526-27 (7th Cir. 2005).

## DISCUSSION

I.  Kaitschuck's Motion For Summary Judgment

Kaitschuck moves for summary judgment in her favor on all claims. Kaitschuck argues that she can proceed on her motion for summary judgment under the direct or indirect methods of proof.   (P SJ Mem. 8).  However, the direct and indirect methods of proof are options available to a plaintiff trying to defeat a defendant's motion for summary judgment, and not to a plaintiff seeking to have judgment entered in the plaintiff's favor at the summary judgment stage.  *See, e.g., Raymond v. Ameritech Corp.*, 442 F.3d 600, 610 (7th Cir. 2006)(explaining how a plaintiff can "prove discrimination" and "may prevail in an employment discrimination lawsuit," when explaining how a plaintiff can defeat a defendant's motion for summary judgment); *Morgan v. SVT, LLC*, 724 F.3d 990, 995 (7th Cir. 2013)(explaining that in responding to an employer's motion for summary judgment, the plaintiff must initially identify whether he is making arguments under the direct or indirect method of proof or both); *Hall v. Forest River, Inc.*, 536 F.3d 615, 621 (7th Cir. 2008)(stating that at the trial stage "the burden-shifting of the *McDonnell Douglas* method falls away, and the question is simply whether that evidence is sufficient to allow a reasonable jury to find in favor of the plaintiff"); *Dewitt v. Proctor Hosp.*, 517 F.3d 944, 950 (7th Cir. 2008)(stating that "[t]he standard understanding is that there are two ways to make out a prima facie case of discrimination—which is to say, a showing in advance of trial sufficient to defeat the defendant's motion for summary judgment")(Posner, Circuit Judge, concurring);

*Salvadori v. Franklin School Dist.*, 293 F.3d 989, 996 (7th Cir. 2002)(stating that "[i]f a plaintiff cannot defeat a summary judgment motion based on the strength of her proffered direct evidence, she may use the burden-shifting approach outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)"); *Curry v. Menard, Inc.*, 270 F.3d 473, 481 (7th Cir. 2001)(stating that "the burden-shifting approach of *McDonnell Douglas* applies only to pretrial proceedings and drops out once a case goes past the summary-judgment stage").  Kaitschuck cites *Ley v. Wisconsin Bell, Inc.*, 819 F.Supp. 2d 864 (E.D. Wis. 2011), in support of her argument on her motion for summary judgment.  However, in *Ley*, the court addressed the direct and indirect method of proof in ruling on a motion for summary judgment filed by the defendant and indicated that the case would proceed further. *Id.*

The court has considered the merits of Kaitschuck's motion for summary judgment under Federal Rule of Civil Procedure 56.  In order to obtain judgment as a matter of law, she must show that there is no genuine issue as to any material fact and that she is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56. Kaitschuck must establish that no reasonable trier of fact could find in favor of Defendants on Kaitschuck's claims.  *Anderson*, 477 U.S. at 248.  Defendants have pointed to ample evidence showing that Kaitschuck's employment was terminated due to her failure to obtain her required Certification and not due to any perceived or actual disability, or due to any exercise of her rights under the ADA or FMLA. Kaitschuck has failed to explain in her motion why such evidence is not admissible

5

or why she believes in light of such evidence that she is entitled to judgment as a matter of law on any of her claims. Based on the above, Kaitschuck's motion for summary judgment is denied.

## II. Defendants' Motion for Summary Judgment

Defendants move for summary judgment on all claims.

### A. ADA Discrimination and Failure-to-Accommodate Claims

Defendants move for summary judgment on the ADA discrimination and failure to accommodate claims, arguing that Kaitschuck is not a qualified individual, and that Kaitschuck cannot defeat Defendants' motion under the direct or indirect method of proof.

#### 1. Qualified Individual

Defendants argue that Kaitschuck has not shown that she is a qualified individual under the ADA. The ADA provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The ADA also requires an employer to provide reasonable accommodations to a qualified individual with a disability.

*James v. Hyatt Regency Chicago*, 707 F.3d 775, 782-83 (7th Cir. 2013). The ADA defines a "qualified individual" as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

Defendants contend that an essential function of Kaitschuck's job required her to obtain the Certification before January 1, 2012 as a condition of her employment. (D SF Par. 20, 21, 26). Pursuant to 42 U.S.C. § 12111(8), in determining whether an individual is a qualified individual, "consideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job." *Id.* It is undisputed that effective January 1, 2010, DDL implemented the Program under which a Pharmacy Technician was required to obtain the Certification as a condition of employment for DDL. (R DSF Par. 5). It is also undisputed that under the Program, any Pharmacy Technician licensed before January 1, 2008 had to obtain the Certification before January 1, 2012. (R DSF Par. 6). Thus, the Certification was determined by DDL to be an essential function for a Pharmacy Technician. It is further undisputed that Kaitschuck was a Pharmacy Technician who was licensed before January 1, 2008, and that Kaitschuck never obtained the Certification. (R DSF Par. 10, 27).

Kaitschuck argues that she was able to perform the essential functions of her job, and that this is shown by her good performance reviews over the years while

working for DDL. (Ans. DSJ 2, 6); (PSF Par. 15). However, whether or not Kaitschuck performed certain functions well during her employment is irrelevant if she was not properly qualified to do all the functions of her job as required by her employer. DDL determined that such Certification was a requirement for Kaitschuck's job and DDL gave a sufficient period of time for employees in Kaitschuck's situation who were licensed before January 1, 2008, to obtain the required certification by January 1, 2012.

Kaitschuck also contends that "the law did not require Pharmacy Technicians licensed prior to January 1, 2008 to pass the Exam." (PSF Par. 16). However, Kaitschuck cites no precedent that provides that if certain requirements are not present in a law, that an employer cannot determine any requirements for a job. In fact, the ADA makes such a point clear by providing that "consideration shall be given to the employer's judgment as to what functions of a job are essential. . . ." 42 U.S.C. § 12111(8). Defendants have presented ample evidence showing a legitimate business reason to justify the implementation of the Program that required Certification.

Kaitschuck also argues that she was on medical leave during some time after the initiation of the Program and was not able to prepare for or take the Exam. (Ans. D SJ 6). It is undisputed that the Program was initiated on January 1, 2010, and that in "January 2010, or a little bit after," Kaitschuck became aware of the Program. (R DSF Par. 11). Kaitschuck claims she took leave from May 17, 2011 to September 26, 2011 and leave from December 12, 2011 until her termination in January 2012.

(PSF Par. 29, 34). Kaitschuck fails however, to point to evidence to explain why in the ample remaining time, which by her own assertions, was approximately nineteen months during the two years she was given to obtain the Certification, she failed to do so. Although Kaitschuck now claims that her termination due to her failure to obtain the Certification was a reason suddenly manufactured as an excuse to fire her, there are ample undisputed facts illustrating DDL's efforts during the two-year window to provide Kaitschuck ample opportunities to get the Certification and to let her know that she would not be able to work at DDL if she did not do so by the deadline.

It is undisputed that in October 2011, Sonia Chugh (Chugh), the Pharmacist in Charge at DDL asked Kaitschuck if she intended to take the Exam. (R DSF Par. 13). Defendants contend in statement of facts paragraph 14 (Paragraph 14) that Kaitschuck responded that she would not be taking the test because she thought she was "grandfathered" and she had "personal reasons" not to take the Exam. (DSF Par. 14). Kaitschuck responds to Paragraph 14, by stating "Disputed, but immaterial." (R DSF Par. 14). However, Kaitschuck fails to point to evidence to support her response as required pursuant to Local Rule 56.1. Kaitschuck contends that she informed Chugh that she would not take the test because of her surgeries. (R DSF Par. 14). Such a response does not contradict the above-referenced facts in Paragraph 14. A review of Kaitschuck's deposition in fact shows that Kaitschuck testified that she told Chugh that she "probably wouldn't be" taking the test "because [she] thought [she] was grandfathered in and [she] had personal reasons for not

9

taking it." (K Dep. 46). Kaitschuck cannot defeat Defendants' motion by creating a dispute where none exist, and Kaitschuck improperly seeks to dispute the facts in Paragraph 14. Pursuant to Local Rule 56.1, such facts are deemed undisputed.

It is also undisputed that Chugh reported to Christy Enz (Enz), DDL's Pharmacy Director that Kaitschuck "was refusing" to obtain the Certification and that Enz reported such facts to Haran who was responsible for matters relating to human resources at DDL. (R DSF Par. 16). Kaitschuck admits that Haran and Enz then issued a letter (Warning Letter) reminding employees that if they failed to obtain the Certification by December 31, 2011, DDL would terminate their employment. (R DSF Par. 17). Kaitschuck further admits that in October 2011, Chugh provided Kaitschuck with a warning letter. (R DSF Par. 17-18). Kaitschuck attempts to avoid the ramifications of the Warning Letter by arguing that the Certification requirement was not included in the employee handbook. However, any contents of the handbook in no way negated the clear and unequivocal warning provided to Kaitschuck in the Warning Letter. Kaitschuck admits that after receiving the Warning Letter she again informed Chugh that she did not intend to take the Exam. (R DSF Par. 19). It is further undisputed that even after getting the Warning Letter in October 2011, Kaitschuck failed to register for the Exam. (R DSF Par. 22). Kaitschuck contends that she was "on medical leave for most of 2011." (R DSF Par. 22). However, such a statement is not supported by Kaitschuck's own admissions. Kaitschuck has admitted that she was on leave from May 17, 2011 to September 26, 2011, and from December 12, 2011, until her termination in January 2012.

Therefore, Kaitschuck was not on leave and was available to register for the Exam from January 2011 to May 17, 2011, a four and a half month period, and from September 26, 2011 to December 12, 2011, almost a two and a half month period. This totals a seven month period when she was not on leave in 2011, and thus Kaitschuck was not on leave for most of 2011 as she claims.

In addition, Kaitschuck admitted at her deposition that she did not even look into what was required to register for the Exam. (K Dep. 98). Kaitschuck also indicated at her deposition that she was not intending to take the Exam because Pharmacy Technicians "had to study for [the Exam] on [their] own time, and [she] wasn't very agreeable to that, because " her "personal time is [her] personal time at home." (K Dep. 97). It is also undisputed that DDL offered its employees an online certification training course (Course) at no charge to employees. (R DSF Par. 23). Kaitschuck claims that she was unaware of the Course, but she points to no evidence that the Course was unavailable to her if she made a relevant inquiry, or that DDL took any efforts to conceal the existence of the Course from Kaitschuck. (R DSF Par. 23); (R PSAF Par. 62). If Kaitschuck was concerned about impediments to prepare or take the Exam, she would have made the necessary inquiries. However, the record clearly shows that Kaitschuck repeatedly refused to take the Exam. It is undisputed that Kaitschuck was physically able to request additional time to obtain Certification and her surgery did not prevent her from doing so. (R DSF Par. 24-25). Kaitschuck admits that, after repeatedly telling DDL that she did not intend to take the Exam, she at no time prior to the January 1, 2012, deadline stated to anyone at

DDL that she had changed her mind and intended to take the Exam or that she needed additional time to do so. (R DSF Par. 24-25). Thus, the undisputed facts show that Kaitschuck indicated to DDL that she was not going to take the Exam even after having been given two years to do so, and after being warned in writing that failure to take the Exam would result in the termination of her employment. Kaitschuck's testimony shows that among the reasons for not taking the Exam was her belief that she was "grandfathered in" and that she did not think it was fair to make her study for the Exam on her personal time. (K Dep. 46). DDL also points to further undisputed facts that show that after Kaitschuck's termination she subsequently applied for other Pharmacy Technician jobs which required the Certification and she still has not attempted to obtain the Certification. (R DSF Par. 27). Such facts belie any suggestion that Kaitschuck would have obtained the Certification at DDL if she had in fact requested such an extension.

The undisputed facts show that DDL reasonably decided that Certification was an essential function of Kaitschuck's job. The undisputed facts also show that regardless of any perceived or actual disability, Kaitschuck was not willing to obtain the Certification and failed to make reasonable efforts to do so. Kaitschuck also attempts to make a distinction as to whether DDL asked her to merely take the Exam or to actually succeed on the Exam and obtain the Certification. Whether certain individuals asked at one point whether Kaitschuck was going to take the Exam or whether they asked if she was going to obtain Certification is mere semantics and is not material. If Kaitschuck was refusing to even take the Exam, then it was a

foregone conclusion that she also was not intending to obtain the Certification. Further, Kaitschuck was fully aware of the Program that required the employees in her position to *obtain* Certification by a certain date and she was further warned that failure to *obtain* Certification would result in termination of her employment.

Kaitschuck also argues that "[r]egardless of whether [Kaitschuck] passed the Exam, she would not have been a better employee in light of her years of experience and positive work performance." (Ans. DSJ 6). Kaitschuck indicates that she believes that "the Exam was not critical to [her] job duties." (Ans. DSJ 3). However, the court is not here to evaluate the wisdom or efficiency of an employer's job requirements. The Seventh Circuit has made clear that in ADA cases, the court does not "sit as a kind of super-personnel department weighing the prudence of employment decisions made by firms charged with employment discrimination." *Magnus v. St. Mark United Methodist Church*, 688 F.3d 331, 338-39 (7th Cir. 2012)(internal quotations omitted)(quoting *O'Regan v. Arbitration Forums, Inc.*, 246 F.3d 975, 984 (7th Cir. 2001)). Kaitschuck also believes that she should have been given more time to take the Exam. However, as indicated above, Kaitschuck never requested an extension and in fact indicated that she would not or should not take the Exam. The undisputed facts show that Kaitschuck refused to take the Exam and that she was not capable of performing the essential functions of her job with or without reasonable accommodations for a perceived or actual disability. Thus, Kaitschuck has not shown that she is a qualified individual under the ADA.

## 2. ADA Discrimination Claim

Defendants argue that even if Kaitschuck's ADA claims are not foreclosed since she is not a qualified individual, Kaitschuck cannot defeat Defendants' motion as to the ADA discrimination claim under the direct and indirect methods of proof. A plaintiff who is bringing an ADA discrimination claim who is seeking to defeat a defendant's motion for summary judgment can proceed under the direct or indirect method of proof. *Cloe v. City of Indianapolis*, 712 F.3d 1171, 1181-82 (7th Cir. 2013). Kaitschuck indicates that she can proceed under the direct and indirect methods of proof.

### a. Direct Method of Proof

A plaintiff proceeding under the direct method of proof can point to direct evidence or "circumstantial evidence that allows a jury to infer intentional discrimination. . . . ." *Dickerson v. Board of Trustees of Community College Dist. No. 522*, 657 F.3d 595, 601 (7th Cir. 2011). Kaitschuck has not pointed to sufficient direct or circumstantial evidence to show discrimination based upon her perceived or actual disability. As explained above, the undisputed facts show that DDL determined that Kaitschuck needed to obtain Certification by January 2012 to stay employed at DDL and that DDL acted in a consistent fashion during the two-year period and properly terminated the employment of Kaitschuck after giving sufficient

time and a warning.  Thus, Kaitschuck cannot proceed under the direct method of proof.


b.  Indirect Method of Proof

A plaintiff proceeding under the indirect method of proof must first establish a *prima facie* case by showing: (1) that she "is disabled under the ADA," (2) that she "was meeting h[er] employer's legitimate employment expectations," (3) that she "suffered an adverse employment action," and (4) that "similarly situated employees without a disability were treated more favorably."  *Lloyd v. Swifty Transp., Inc.*, 552 F.3d 594, 601 (7th Cir. 2009).  If the plaintiff meets her burden to establish a *prima facie* case, "the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action."  *Id.*  If the defendant provides such a reason, "[t]he plaintiff must then prove by a preponderance of the evidence that the defendant's reasons are pretextual."  *Id.*

As explained above, DDL reasonably required Kaitschuck to obtain the Certification.  Also, as explained above, Kaitschuck refused to even take the Exam at least in part because she did not believe it was fair for her to take the Exam. Kaitschuck has not shown she was meeting her employer's legitimate expectations. As to similarly-situated individuals outside the protected class who were treated more favorably, Kaitschuck points to evidence showing that DDL exempted from the Certification Requirement certain employees such as those in Store Manager

positions. (Ans. DSJ 3). However, DDL has pointed to ample evidence showing that a Store Manager's responsibilities is significantly different from that of a Pharmacy Technician. (R PSF Par. 53); (DSF Par. 38-45). Kaitschuck has not shown that she is comparable to Store Managers at DDL. Likewise Kaitschuck has not shown that she was comparable to other employees exempted from Certification such as Medicare Billers, Registered Nurses, or students who worked for DDL. (DSF Par. 8-9, 37-45). Kaitschuck also contends that two Pharmacy Technicians took the Exam in December 2011, and failed the Exam and were allowed to retake the Exam after the deadline. (Ans. DSJ 2-3); (PSAF Par. 60). However, such employees were not similarly-situated with Kaitschuck who admittedly never took the Exam, indicated she was not intending to take the Exam, and never asked for additional time to take the Exam. Kaitschuck also contends that it was unfair that other employees were given more time to take the Exam. However, even if that was true, the undisputed evidence shows that Kaitschuck indicated she was not going to take the exam and never requested any extension of the deadline. Had Kaitschuck taken the Exam and failed the Exam and was not allowed to retake the Exam after the deadline, she would have been in such a position to make such an argument as to similarly-situated employees. Also, although Kaitschuck contends that during her nineteen months when she was not on medical leave and could have prepared for the Exam, she did not have enough time to do so, it is undisputed that the average time to complete the course work on the free Course offered to her was only five to eight hours. (R DSF Par. 23); (PSAF Par. 74). Kaitschuck has thus failed to point to a

16

similarly-situated employee outside the protected class who was treated more favorably than her. Therefore, Kaitschuck has failed to establish a prima facie case.

### c. Pretext

Defendants argue that even if Kaitschuck was able to establish a *prima facie* case, Kaitschuck has failed to show that Defendants' reason for termination of Kaitschuck's employment was a pretext. To meet the pretext requirement, the plaintiff must establish that the employer's reason was "a dishonest explanation, a lie rather than an oddity or an error." *Bodenstab v. County of Cook*, 569 F.3d 651, 657 (7th Cir. 2009)(internal quotations omitted)(quoting *Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 642 (7th Cir. 2008))(stating that "[s]howing pretext requires [p]roof that the defendant's explanation is unworthy of credence")(internal quotations omitted)(quoting *Filar v. Bd. of Educ. of City of Chicago.*, 526 F.3d 1054, 1063 (7th Cir. 2008)). As explained above, the undisputed evidence shows a consistent progression of events beginning with the initiation of the Program, the subsequent Warning Letter, and ultimately the termination when Kaitschuck failed to comply with the Certification requirement. Such series of events in no way suggests an ulterior motive on the part of DDL or that DDL manufactured an excuse to cover up unlawful discrimination. Kaitschuck also argues that she was the only employee who was terminated because of a failure to obtain the Certification by the deadline. (PSF Par. 55). However, as explained above, the two employees who were given extensions were given extensions after taking the Exam prior to the deadline and

17

failing and indicating a willingness to obtain the Certification. Kaitschuck argues that DDL was "strictly applying the" Program requirements "only to" Kaitschuck. (Ans. DSJ 6). However, such a statement is demonstrably incorrect. The undisputed facts show that there was only one other Pharmacy Technician, Jennifer Urban (Urban), who refused to take the Exam or obtain the Certification as Kaitschuck did. (DSF Par. 29). The undisputed facts show that consistent with the treatment of Kaitschuck, DDL was prepared to terminate Urban's employment, but Urban instead chose to resign. (R DSF Par. 29). Kaitschuck also contends that on one occasion Haran said to her "you're having surgery again?" (PSAF Par. 83). However, such an isolated and, on its face, an innocent comment, even if made and perceived by Kaitschuck otherwise, is not sufficient to indicate that Kaitschuck's termination was part of some plan to fire Kaitschuck based on an actual or perceived disability. Thus, Kaitschuck has failed to show that the reason given for her termination was a pretext. Therefore, Defendants' motion for summary judgment on the ADA discrimination claim is granted.


### 3. ADA Failure-To-Accommodate Claim

Defendants move for summary judgment on the ADA failure-to-accommodate claim. For an ADA failure-to-accommodate claim a plaintiff must establish: (1) that she "is a qualified individual with a disability," (2) that "the employer was aware of h[er] disability," and (3) that "the employer failed to reasonably accommodate the disability." *James*, 707 F.3d at 782-83 (stating that "the standard rule is that a

plaintiff must normally request an accommodation before liability under the ADA attaches")(internal quotations omitted)(quoting *Jovanovic v. Emerson Elec. Co.*, 201 F.3d 894, 899 (7th Cir. 2000)); *Cloe v. City of Indianapolis*, 712 F.3d 1171, 1176 (7th Cir. 2013)(stating that "[o]nce the employer has been put on notice, the employer must take reasonable steps to accommodate the employee's disability").

As explained above, the undisputed facts show that Kaitschuck was not a qualified individual under the ADA. In addition, the undisputed facts show that Kaitschuck failed to request an extension to obtain the Certification. Thus, Kaitschuck never requested such an accommodation. Kaitschuck also contends that DDL failed to engage in the interactive process as required under the ADA. *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1061 (7th Cir. 2014)(stating that "[a]fter an employee has disclosed that she has a disability, the ADA requires an employer to 'engage with the employee in an interactive process to determine the appropriate accommodation under the circumstances'")(quoting *E.E.O.C. v. Sears, Roebuck & Co.*, 417 F.3d 789, 805 (7th Cir. 2005)). However, the undisputed facts show that DDL repeatedly inquired from Kaitschuck as to whether she even intended to take the Exam, and she indicated in the negative for reasons such as that she believed she should have been "grandfathered in" and she did not want to study on her personal time. (K Dep. 105). Kaitschuck never requested an extension or gave any indication that if an extension was given she would have taken the Exam and DDL had no reason to believe that an extension was desired by Kaitschuck. Kaitschuck contends that in the Fall of 2011, when she asked Haran for leave, he did not inquire as to

whether she required any accommodations.  (P Decl. Par. 36).  However, prior to Kaitschuck's request for leave, she had already indicated her unwillingness to take the Exam, and DDL had every reason at that juncture to believe that Kaitschuck simply did not intend to take the Exam and therefore there was no reason to inquire as to any possible accommodation relating to Kaitschuck obtaining the Certification.

Kaitschuck has not pointed to sufficient evidence to show that any extension would have been a reasonable accommodation in view of the undisputed facts showing that Kaitschuck had ample time to obtain the Certification by the deadline, she refused to take the Exam, and she had no intention to take the Exam.  Although Kaitschuck argues that other employees had more time to take the Exam, she has not shown that the nineteen months she admittedly had available were insufficient to take the Exam.  Kaitschuck has thus failed to point to sufficient evidence to show that an extension of the Certification requirement was a reasonable accommodation in this case.  Therefore, Defendants' motion for summary judgment on the ADA failure-to-accommodate claim is granted.


B.  Retaliation Claims

Defendants move for summary judgment on the ADA and FMLA retaliation claims.  A plaintiff who is bringing an ADA retaliation claim and who is seeking to defeat a defendant's motion for summary judgment can proceed under the direct or indirect method of proof.  *Dickerson*, 657 F.3d at 601-02.  Kaitschuck indicates that she is proceeding under both the direct and indirect methods of proof.  A FMLA

retaliation claim is generally addressed under the same framework as for an ADA retaliation claim. *Burnett v. LFW Inc.*, 472 F.3d 471, 481 n.5 (7th Cir. 2006)(stating that a court should "assess a claim of FMLA retaliation in the same manner that [the court] evaluate[s] a claim of retaliation under other employment statutes, such as the ADA or Title VII")(internal quotations omitted)(quoting *Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 503 (7th Cir. 2004)); *Scruggs v. Carrier Corp.*, 688 F.3d 821, 826 (7th Cir. 2012)(stating that "[a]n employee who alleges that her employer retaliated against her for exercising her rights under the FMLA can proceed under the direct or indirect methods of proof familiar from employment discrimination litigation")(internal quotation omitted)(quoting *Smith v. Hope Sch.*, 560 F.3d 694, 702 (7th Cir. 2009)). Kaitschuck cannot proceed under the direct method of proof as she has not pointed to sufficient direct or circumstantial evidence to create a convincing mosaic of retaliation. Nor has Kaitschuck pointed to sufficient evidence of a causal connection between any protected activity and an adverse action taken against her. *See Cloe*, 712 F.3d at 1180 (explaining that under the direct method of proof, a plaintiff must "show that (1) she engaged in a statutorily protected activity; (2) she suffered an adverse action; and (3) there is a causal connection between the two"); *Pagel v. TIN Inc.*, 695 F.3d 622, 631 (7th Cir. 2012)(stating the same requirements for a FMLA retaliation claim); *see also Ridings v. Riverside Medical Center*, 537 F.3d 755, 771 (7th Cir. 2008)(stating in regard to FMLA retaliation claim that "[a] plaintiff can prevail under the direct method by showing an admission of discrimination or by "constructing a convincing mosaic of circumstantial evidence

21

that allows a jury to infer intentional discrimination by the decisionmaker")(internal quotations omitted)(quoting *Phelan v. Cook County*, 463 F.3d 773, 779 (7th Cir. 2006)).

A plaintiff proceeding under the indirect method of proof for an ADA retaliation claim must first establish a *prima facie* case by showing: (1) that she "engaged in protected activity" (2) that she "was performing h[er] job satisfactorily," and (3) that she "was singled out for an adverse employment action that similarly situated employees who did not engage in protected activity did not suffer." *Dickerson*, 657 F.3d at 601-02. If a plaintiff establishes a *prima facie* case, "the burden then shifts to the defendant to present a non-invidious reason for the adverse employment action." *Id.* If the defendant offers such a reason, "the plaintiff must then demonstrate that the defendant's proffered reason was pretextual." *Id.* For a FMLA retaliation claim *prima facie* case, the plaintiff must "produce evidence that she was treated differently from similarly situated employees who did not request FMLA leave, even though she was performing her job satisfactorily." *Smith*, 560 F.3d at 702.

As explained above, the undisputed facts show that at the time in question, Kaitschuck was not performing her job in a satisfactory manner. Nor has Kaitschuck shown that she was singled out due to her protected activity under the ADA or FMLA. The undisputed facts show that the only other employee who refused to take the Exam was going to be terminated but decided to resign rather than face termination. Kaitschuck has failed to show that DLL's reason was a pretext for

retaliation. The undisputed facts show that DDL repeatedly authorized medical leave for Kaitschuck. The undisputed facts also show that the Program was put in place on January 1, 2010 and the deadline for obtaining Certification was set at that time. Thus, the deadline that formed the basis for the termination of Kaitschuck's employment was in place long before Kaitschuck was granted medical leave on two different occasions in 2011. In terminating Kaitschuck's employment, DDL acted in a manner that was entirely consistent with its position pursuant to the institution of the Program and subsequent Warning Letter. It is also undisputed that prior to the time that Kaitschuck sought her second medical leave in the Fall of 2011 and was granted such leave, DDL was anticipating the potential termination of Kaitschuck's and Urban's employment in view of their refusal to take the Exam and obtain the required Certification. For example, on October 29, 2011, it is undisputed that Enz wrote an email stating: "Kathy Kaitschuck and Jenny Urban are not testing. Both stores already have arrangements made for when they are done." (R DSF Par. 20). Kaitschuck has failed to show that the actions of DDL were based on her taking medical leave or any protected activity. To the contrary, the undisputed facts show that DDL granted Kaitschuck's requests for leaves, and DDL was acting pursuant to established business practices in anticipation of the departures of Kaitschuck and Urban, based on their own refusal to meet DDL's requirements. Therefore, Defendants' motion for summary judgment on the ADA and FMLA retaliation claims is granted.

C.  Remaining State Law Claims

Once the federal claims in an action no longer remain, a federal court has discretion to decline to exercise supplemental jurisdiction over any remaining state law claims.  *See Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1251-52 (7th Cir. 1994)(stating that "the general rule is that, when all federal-law claims are dismissed before trial, the pendent claims should be left to the state courts").  The Seventh Circuit has indicated that there is no "'presumption' in favor of relinquishing supplemental jurisdiction. . . ."  *Williams Electronics Games, Inc. v. Garrity*, 479 F.3d 904, 906-07 (7th Cir. 2007).  The Seventh Circuit has stated that, "in exercising its discretion, the court should consider a number of factors, including "the nature of the state law claims at issue, their ease of resolution, and the actual, and avoidable, expenditure of judicial resources. . . ."  *Timm v. Mead Corp.*, 32 F.3d 273, 277 (7th Cir. 1994).  The court has considered all of the pertinent factors and, as a matter of discretion, the court declines to exercise supplemental jurisdiction over the remaining state law claims.  The instant action is still in the pre-trial stage and there is not sufficient justification to proceed solely on the remaining state law claims.  The remaining state law claims are therefore dismissed without prejudice.

## CONCLUSION

Based on the foregoing analysis, Kaitschuck's motion for summary judgment is denied, Defendants' motion for summary judgment is granted in part, and denied in part, and the remaining state law claims are dismissed without prejudice.


_____
Samuel Der-Yeghiayan
United States District Court Judge


Dated:   April 15, 2014